ᵇIN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHANIE GREEN on behalf of<br>her minor children,<br>et al. | )<br>)<br>) | |
| | ) | Civil Action No. 18-289 Erie |
| Plaintiff, | )<br>) | |
| v. | )<br>) | |
| LARRY MANROSS, City Manager<br>of Titusville PA, et al., | )<br>)<br>) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiffs Stephanie Green ("Green") and Michael Restivo ("Restivo") commenced this civil rights action against various city and county officials as the result of a dispute over Plaintiffs' occupancy of a residence located in the City of Titusville, in Crawford County, Pennsylvania. Named as Defendants are: Titusville City Manager Larry Manross ("Manross"); Titusville City Code Enforcer Timothy Lorenz ("Lorenz"); Titusville Police Chief Harold Minch ("Minch"); Titusville police officer Glen Ciccarelli ("Ciccarelli"); and Crawford County Treasurer Christine Krzysiak ("Krzysiak"), all of whom are apparently being sued only in their individual capacities.[1]

On December 3, 2018, the Court granted the Plaintiffs leave to proceed *in forma pauperis* and directed that their complaint be filed. Defendant Krzysiak has since filed a motion to dismiss the complaint which is now pending before the Court. ECF No. 21. Also pending

---

[1] Defendant Krzysiak has been inaccurately identified in the complaint as Christine "Krisiak." For present purposes, the Court will utilize the correct spelling of Ms. Krzysiak's surname.

before the Court is a motion to dismiss filed by Defendants Manross, Lorenz, and Ciccarelli (referred to collectively, along with Minch, as the "City Defendants").[2] ECF No. 24.

For the reasons that follow, Krzysiak's motion to dismiss will be granted, and the City Defendants' motion will be granted in part and denied in part.

## I. FACTUAL HISTORY

The instant dispute arises out of Plaintiffs' occupancy, and eventual purchase, of a residence located on North Martin Street in the City of Titusville. At times relevant to this litigation, the property was owned by Chris and Eva Tharp. ECF No. 4-1 at 3, 14. After the Tharps became delinquent on their tax obligations, the Crawford County Tax Claim Bureau, as trustee for the various taxing bodies, exposed the premises to public sale, pursuant to the provisions of the Real Estate Tax Sale Law, 72 Pa. Stat. Ann. §5860.101, et seq. ECF No. 4-1 at 3. The property was duly advertised but no sale was consummated. Id.

As of June of 2018, Green, Restivo, and Green's minor children were occupying the residence, with the permission of the Tharps, and undertaking some repairs. Plaintiffs eventually acquired ownership of the property through a private sale agreement with the Tax Claim Bureau that was consummated on September 18, 2018. ECF No. 4-1 at 3-5. This litigation concerns events that transpired during the interim.

---

[2] At the time that the City Defendants' motion was filed, Minch was not yet represented and no attorney had appeared on his behalf. Subsequently, counsel for Manross, Lorenz, and Ciccarelli entered an appearance on Minch's behalf as well. ECF Nos. 27, 28, 29. Although Minch was not technically a party to the City Defendants' motion to dismiss, the Court has an independent obligation, under 28 U.S.C. §1915(e)(2), to review the sufficiency of the claims against him, due to the fact that Plaintiffs are proceeding *in forma pauperis*. For the sake of convenience, the Court will refer to Minch as one of the "City Defendants."

The first relevant incident occurred on Friday, June 22, 2018, when Lorenz allegedly approached Green at the North Main Street property and accused her of "squatting." ECF No. 4, Section III (C)(a). Green advised Lorenz that Restivo had been in contact with Krzysiak regarding Plaintiffs' intent to purchase the property. Id.

On June 25, 2018, Green and Lorenz exchanged several emails. Initially, Lorenz wrote Green, stating that he had been in contact with county officials, who informed him that the property was "County held" and "would not reach repository until it has made it through Judicial Sale." ECF No. 4-1 at 6. Noting that the judicial sale had not yet occurred, Lorenz concluded, "Therefore, you have no legal standing in the matter and must vacate the premises immediately and discontinue any repairs you are making to the structure. If you fail to do so I will be forced to take legal action against you." Id. Green responded that Restivo had just been to the courthouse the previous Friday. Id. She assumed that "one of us has been misinformed," because both she and Restivo "[had] been told [that the property was] in repository and we have bid according to procedure." Id. In a follow-up email, Green advised that the Plaintiffs' "paperwork was 'on [Krzysiak's] desk' as of last week." ECF No. 4-1 at 7.

On the same day that these emails were exchanged, Plaintiffs obtained verbal confirmation from the Tharps that they had "permission" to occupy and repair the premises. ECF No. 4 at 3; ECF No. 4-1 at 14. Plaintiffs claim that they also spoke with Krzysiak, who advised them to provide photographs and estimates of the needed repairs, as that might result in a lower property assessment and thus prompt the County to accept a lower purchase price. ECF No. 4, Section III(c)(h). Plaintiffs state that they faxed photographs of the premises to the Tax Claim Bureau several days later. Id.

Official records indicate that Restivo's private bid on the North Martin Street property was formally submitted on June 29, 2019. ECF No. 21-3; ECF No. 21-2. The bid form indicates that notice of the bid would be sent to the Tharps as well as the local taxing bodies holding liens on the property. ECF No. 21-3. These entities would then have forty-five (45) days in which to disapprove of the proposed private sale and petition the Crawford County Court of Common Pleas for a hearing on the matter. *Id.* Assuming that no party objected, the proposed sale would be consummated on September 18, 2018. *Id.*

The next relevant communication occurred on July 11, 2018, when Lorenz sent Green the following email:

> [Krzysiak] confirmed that you made an offer on the property and that it would take approximately 90 days to complete the sale. As I mentioned before, if you are currently living there, as I'm being told you are, you must vacate the property immediately. Once you have successfully acquired the property I will perform an inspection to identify the repairs that will be needed in order for you to occupy it. You will not be provided with city services (water/sewer) until the repairs have been made and inspected.

ECF No. 4-1 at 7.

The following day, July 12, Lorenz approached Green and attempted to issue an order to vacate the premises on the grounds that Plaintiffs were trespassing. ECF No. 4, Section III(C)(d). Green disputed that her family was trespassing and recommended that Lorenz speak to Restivo about the situation. She "inform[ed] Lorenz of title of interest" and the fact that the Tharps had permitted Plaintiffs to remain on the premises. *Id.*; see ECF No. 4-1 at 7. Later that day, Lorenz emailed Plaintiff to inform her that he had spoken with Krzysiak and Minch, and both of them agreed that Plaintiffs lacked "standing" to occupy the premises. ECF No. 4-1 at 8. Lorenz advised

> I will be visiting the property tomorrow 7/13 to post an Order to Vacate which will require that you vacate the property immediately and remove your personal

belongings. To avoid penalties, including charges for trespass, it is imperative that you seek housing elsewhere.

*Id.*

Lorenz did, in fact, return to the property on July 13, accompanied by Chief Minch and Officer Ciccarelli. ECF No. 4, Section III(C)(e). Upon their arrival, Minch asked Green to step outside and attempted to "forcibly" remove her from the home. *Id.* Green refused, stating that she had a right to be there and that she would not leave her children inside. *Id.* Green again suggested that Lorenz speak to Restivo, as he was the one who had submitted the paperwork and payment for the bid. *Id.*

On July 16, 2018, Restivo made contact with Lorenz to discuss the order to vacate. ECF No. 4, Section III(C)(f). Restivo attempted to explain why Plaintiffs' believed they had a right to occupy the premises, but Lorenz insisted that Plaintiffs could not lawfully return until the deed had been transferred to them and was properly recorded. Id. Lorenz further stated that the house posed health hazards and was in need of certain unspecified repairs. Id. Although Restivo invited Lorenz to inspect the repairs that Restivo had made to the home, Lorenz declined to do so and indicated that he would not allow water and sewer services to be restored at that point. Id.

A similar discussion occurred on July 20, 2018. On that date, Lorenz visited the property to advise Plaintiffs that Police Chief Minch was inquiring about whether Plaintiffs had vacated the premises. ECF No. 4, Section III(C)(g). Restivo pleaded with Lorenz to stay the order to vacate, explaining that Plaintiffs were new to the area and would be rendered homeless if evicted, but Lorenz would not change his position. Id.

Several days later, Restivo faxed Krzysiak, seeking the County's written consent for Plaintiffs to occupy the residence. ECF No. 4, Section III(C)(h). By return email, Krzysiak confirmed her receipt of Plaintiffs' June 29, 2018 bid and noted that the process for advertising

and final approval of the bid "typically takes 90 days from beginning to end if no exception is filed." ECF No. 4-1 at 18. Krzysiak opined that Plaintiffs would not be the lawful owners of the property until they were in possession of the deed, stressing: "I **CANNOT** give you consent to enter the property. I do not know of any legal standing that allows you to enter this property and make changes to it." *Id.* (emphasis in the original).

On July 24, 2018, Lorenz and Minch arrived with another city employee to enforce the order to vacate. ECF No. 4, Section III(C)(i). Plaintiffs claim that they were given "less than 10 minutes to gather belongings." Id. Meanwhile, at Lorenz's direction, a city employee secured the doors to the residence, causing damage to the door in the process. Id. In the course of this incident, Lorenz handed Restivo a hard copy of Krzysiak's previous email and informed him that another party was interested in the property. Id. Plaintiffs contacted Manross later that night, presumably to discuss the circumstances of their eviction, but the specifics of the conversation are not set forth in the Complaint. Id.

On July 30, 2018, after apparently consulting an attorney, Restivo emailed Lorenz to "inform" Lorenz that he (Restivo) was claiming an "equitable interest of ownership" in the property. ECF No. 4-1 at 8. According to Restivo, this meant that Plaintiffs had "legal standing" to "continue repairs and/or occupancy" without Lorenz's consent. Id. To that end, Restivo sent a second email to Lorenz on August 2, 2018, informing Lorenz that he intended to return to the property the following day to finish repairs to the plumbing and gas lines and complete construction of a rear wall. ECF No. 4-1 at 10. Restivo indicated that he expected any barricades to the entrance to be removed and again invited Lorenz to inspect the repairs. Id. In addition, Restivo requested "an invoice for the time spent . . . to secure and unsecure . . . entry [to the house]" as well as "the cost of materials for these services by the City." Id.

6

Evidently, Lorenz shared this email with Minch, who responded by advising Restivo: "If you enter this home without proper paperwork and water in the home you will be arrested. Unless you can prove you have purchased it and satisfy Mr. [L]orenz you will go to jail." ECF No. 4-1 at 10-11. Lorenz also emailed Restivo, stating:

> Police Chief Minch made it quite clear what the consequences would be if you entered the property prior to obtaining ownership. If you plan to enter it, even to do repairs, you will be doing so at your own risk. No locks or barricades will be removed nor will there be an inspection conducted at this time.

ECF No. 4-1 at 10. According to Plaintiffs, the city police thereafter surveyed the property to ensure its vacancy. ECF No. 4, Section III(C)(j).

On August 17, 2018, Lorenz was observed by third parties entering the North Martin Street residence with "Mr. and Mrs. Richard Gibbons," who owned the adjacent property. ECF No. 4, Section III(C)(l); ECF No. 4-1 at 16. As Lorenz and the Gibbonses walked through the house, they discussed the Gibbonses' possible purchase of the home. Id. Upon leaving the house, Lorenz turned the main electrical breaker off, closed and locked all windows, and re-padlocked the door. Id. Plaintiffs claim this "effectively put the family pets out to the curb as well." ECF No. 4, Section III(C)(l).

On August 20, 2018, Restivo emailed Manross, detailing his grievances relative to the foregoing events. ECF No. 4-1 at 12-13. Manross, however, did not respond to Restivo's email. ECF No. 4, Section III(C)(m). The next day, Plaintiffs emailed Krzysiak "inquiring about Mr. Lorenz's actions" and "apparent attempt to eradicate plaintiffs from the City of Titusville." ECF No. 4, Section III(C)(n). According to Plaintiffs, Krzysiak responded "that the county does not own the property and can not say who may or may not enter the property." Id.

On August 24, 2018 after once again returning to the North Martin Street property, Plaintiffs were arrested by Minch and "Officer Bean." ECF No. 4, Section III(C)(o). According

to the Complaint, Plaintiffs were handcuffed and placed in holding cells at the Titusville Police Department for approximately thirty minutes, after which they were released by Officer Bean "with an apology and explanation of some 'grey areas on both sides.'" Id. Plaintiffs met with Manross later that same day "to assert their right to the property" and "inquire about the actions of Lorenz and Minch, the arrest and the order to vacate as well as the denial of city services of water and sewer." Id. Manross "upheld" the positions of Lorenz and Minch. Id.

On August 31, 2018, Lorenz was again observed entering the North Martin Street property, this time through the living room window. ECF No. 4, Section III(C)(q); ECF No. 4-1 at 15. The following day, Ciccarelli entered the home and tore down the living room curtains, front porch blinds, and dining room curtains. ECF No. 4, Section III(C)(r). Ciccarelli and Officer Bean then placed yellow caution tape and black duct tape over the front door and blockaded the entrance. Id. Ciccarelli subsequently detained Plaintiffs as they were walking along a public street, "scolded" them for having their personal belongings in the home, and advised that their re-entry into the house would constitute a felony trespass. Id.

In September of 2018, Officer Bean filed criminal charges against the Plaintiffs for defiant trespass based upon their presence at the subject property on August 24, 2018. ECF No. 4-1 at 19-27. The criminal charges were ultimately withdrawn on October 11, 2018. ECF No. 21-6.

In the meantime, Plaintiffs commenced this lawsuit on September 21, 2018. ECF No.1. In their complaint, ECF No. 4, Plaintiffs allude to a variety of civil rights violations, referencing 42 U.S.C. §§ 1981, 1983, and 1985, and various provisions of the Fourth, Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution. Plaintiffs also allege "injury by Municipal and Individual Negligence," citing the provisions of Pennsylvania's sovereign immunity statutes, 42

Pa. C.S.A. §§8541-8542. The Court therefore assumes that Plaintiffs are trying to assert claims under both federal and state law.

Krzysiak filed her motion to dismiss on February 20, 2018, and the City Defendants' motion followed on March 1, 2018. ECF Nos. 21, 24. Plaintiffs' responses to these motions were due on March 14, 2019 and March 25, 2019, respectively. ECF Nos. 23 and 26. After Plaintiffs failed to submit any reply, the Court entered an order on July 9, 2019 giving Plaintiffs one final opportunity, on or before July 24, 2019, to submit a response in opposition to the Defendants' motions. ECF No. 30. To date, Plaintiffs have not done so.[3] Accordingly, the Court will adjudicate the pending motions on the basis of the filings currently of record.

## II. STANDARD OF REVIEW

### A. Motions to Dismiss

Defendants' motions are brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the ground that the Complaint fails to state a claim upon which relief can be granted. "When considering a Rule 12(b)(6) motion, we accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Wayne Land & Mineral Grp. LLC v. Delaware River Basin Comm'n*, 894 F.3d 509, 526–27 (3d Cir. 2018) (internal quotation marks and citations omitted). In order to survive dismissal, "a complaint

---

[3] On July 24, 2019, Plaintiff Stephanie Green purported to electronically file a response to the pending motions; however, the filing appears to be nothing more than the first page of Defendant Krzysiak's own motion to dismiss the complaint. ECF No. 32. The Clerk's office generated a quality control message the following day, which advised Plaintiffs of the error and directed them to refile their response using the "Errata" event in the Court's electronic filing system. The message was electronically sent to Ms. Green's email address of record, and copies were also mailed to both Plaintiffs at their address of record. Despite this notice, no further response of any kind has been received by the Court from either Plaintiff.

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).[4]

In conducting a Rule 12(b)(6) analysis, courts are limited to considering "only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon [those] documents." *Wayne Land & Mineral Grp.*, 894 F.3d at 526–27 (internal quotation marks and citations omitted) (alteration in the original). Defendants' exhibits in this case fall squarely within these parameters. The City Defendants have submitted: (i) a copy of the "Proposed Private Sale of Tax Claim Land" agreement pertaining to the North Martin Street residence, ECF No. 25-1, and (ii) copies of the docket sheets from Plaintiffs' criminal trespass case, ECF No. 25-2. Defendant Krzysiak has submitted: (i) a copy of the same "Proposed Private Sale of Tax Claim Land" agreement, ECF No. 21-3; (ii) a copy of a check, dated June 29, 2018, in the amount of $3,100.00, which was apparently tendered in connection with the "Proposed Private Sale of Tax Claim Land" agreement, ECF No. 21-2; (iii) proof of the Tax Claim Bureau's publicized notice of the private sale, ECF No. 21-4; (iv) a copy of the Tax Claim Bureau Deed, executed by

---

[4] Because Plaintiffs are proceeding *in forma pauperis*, the Court is independently obligated under 28 U.S.C. § 1915(e) to consider the sufficiency of his complaint and to dismiss the case "at any time" if the action: (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). When conducting a review under 28 U.S.C. §1915(e)(2)(B)(ii), the court applies the same standard of review as it would apply under a traditional Rule 12(b)(6) analysis. *See Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012).

Krzysiak in her capacity as Director of the Bureau, evidencing transfer of the property on September 18, 2018, ECF No. 25-5; and (v) copies of the docket sheets from the Plaintiffs' criminal trespass case, ECF No. 21-6. All of the Defendants' exhibits are matters of public record and/or are undisputedly authentic documents that evidence the transaction upon which Plaintiffs' claims are based. Consequently, the Court will consider these materials in conjunction with its Rule 12(b)(6) analysis without converting the pending motions into Rule 56 motions for summary judgment.

### B. Pro Se Litigations

Because Plaintiffs are proceeding *pro so*, the Court "has an obligation to construe the complaint liberally," *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009), and must "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name," *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 248 (3d Cir. 1999). Notwithstanding this more liberal standard, however, "pro se litigants still must allege sufficient facts in their complaints to support a claim" and "must abide by the same rules that apply to all other litigants." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citations omitted).

## III. DISCUSSION

### A. Claims Brought on Behalf of Stephanie Green's Children

Initially, the Court notes that Plaintiff Stephanie Green is attempting to assert claims on behalf of her minor children. It is well-establish law in this circuit that the right to proceed *pro se* does not give non-lawyer parents the right to represent their children in proceedings before a federal court. *See J.R. v. Lehigh Cnty.*, 534 F. App'x 104, 108 (3d Cir. 2013); *Osei –Afriyie v. Medical College of Pa.*, 937 F.2d 876, 882 (3d Cir. 1991). Accordingly, the claims that have been asserted on behalf of Ms. Green's minor children will be dismissed.

*B. Plaintiffs' Claims Under 42 U.S.C. §1983*

Plaintiffs assert numerous claims under 42 U.S.C. §1983, which provides a private right of action as against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. In order to establish a valid §1983 claim, a plaintiff must show that the defendant, while acting under color of state law, violated one or more of the plaintiff's federal constitutional or statutory rights. *See West v. Atkins*, 487 U.S. 42, 48 (1988). To be liable, the defendant must have been personally involved in the alleged wrongdoing. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

To hold an official in a supervisory position liable under §1983, the plaintiff must allege that the official "participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016) (internal quotation marks and citation omitted). In addition, policymaking officials may be liable "if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (internal quotation marks and citation omitted; alteration in the original).

In this case, the Plaintiffs have adequately alleged each Defendant's status as a person acting under color of state law. Accordingly, the Court will focus on whether or not Plaintiffs have pleaded a violation of their federally secured rights. As part of this inquiry, the Court must

consider whether Plaintiff has alleged facts sufficient to establish each Defendant's personal involvement in the alleged wrongdoing. *Rode,* 845 F.2d at 1207.

### 1.  PLAINTIFFS' FIFTH AMENDMENT CLAIMS

In their Complaint, Plaintiffs appear to assert claims based on the "5th Amendment Due Process Clause." ECF No. 4, Section II. "[T]he due process clause under the Fifth Amendment only protects against federal governmental action and does not limit the actions of state officials." *Caldwell v. Beard,* 324 F. App'x 186, 189 (3d Cir. 2009). Because none of the Defendants named herein are federal actors, Plaintiffs' claims based upon Fifth Amendment violations fail as a matter of law and will be dismissed.

### 2.  PLAINTIFFS' EIGHTH AMENDMENT CLAIMS

Plaintiffs also purport to state Eighth Amendment claims pertaining to "Equal Protection of laws" and "Cruel Unusual Punishment." ECF No. 4, Section II.  Plaintiffs' right to equal protection of the laws is afforded by the Fourteenth Amendment, not the Eighth Amendment.  Accordingly, that claim is addressed below in the context of Plaintiffs' other Fourteenth Amendment claims.

As for the Eighth Amendment's proscription against "cruel and unusual punishment," U.S. CONST. amend VIII, this protection does not apply until an inmate has been both convicted and sentenced for his crimes. *See Bistrian v. Levi,* 696, F.3d 352, 366 (3d Cir. 2012) (citing *Graham v. Connor,* 490 U.S. 386, 392 n.6 (1989)).  Claims pertaining to the treatment of pretrial detainees are analyzed under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment. *Natale v. Camden Cty. Corr. Facility,* 318 F.3d 575, 581 (3d Cir. 2003); *Bos. v. Prime Care Med., Inc.,* No. CV 17-5124, 2018 WL 3032853, at *3 (E.D. Pa. June 18, 2018).  Here, the Plaintiffs' averments and exhibits establish that they were arrested for defiant

trespass on August 24, 2018, placed in holding cells at the Titusville Police Department, and released after a brief detention. ECF No. 4, Section III, ¶(o). Court records indicate that the criminal charges were later dropped. ECF No. 25-2. Thus, to the extent Plaintiffs have claims arising from their brief confinement as pretrial detainees, those claims are properly addressed as Fourteenth Amendment due process claims, as is discussed in more detail below. Plaintiffs have stated no plausible Eighth Amendment violation, and those claims will therefore be dismissed.

### 3. PLAINTIFFS' CLAIMS AGAINST DEFENDANT KRZYSIAK

Plaintiffs' claims against Defendants Krzysiak fail to state a cognizable basis for relief because the Complaint does not allege any conduct on her part that shows personal involvement in the alleged wrongdoing. As County Treasurer and Director of the Tax Claim Bureau, Krzysiak oversaw the private sale of the North Martin Street property to Plaintiffs. During the course of Plaintiffs' dispute with Titusville city officials, Krzysiak rendered the opinion that Plaintiffs would not hold an ownership right in the property until the sale process was completed and the deed had been transferred to their names. Accordingly, she opined that she could not vicariously grant consent, on behalf of the County, for Plaintiffs to enter the North Martin Street property, nor did she believe they otherwise had legal standing to be there. Plaintiffs do not articulate anywhere in their Complaint how they believe that Krzysiak's opinions in this regard translate into a violation of their constitutional rights. Furthermore, as a county employee, Krzysiak did not have authority over Lorenz or Minch, who were city employees. Because Krzysiak was not personally involved in the issuance of the order to vacate the North Martin Street property, Plaintiffs' arrest, or any other conduct that could have colorably violated Plaintiffs' rights, the claims against Krzysiak must be dismissed.

14

### 4. PLAINTIFFS' FOURTEENTH AMENDMENT CLAIMS

The Fourteenth Amendment provides, in relevant part, that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. Here, Plaintiffs assert violations of both their due process and equal protection rights.

#### (a) Due Process

The Due Process Clause has both a substantive and procedural component. *Amer. Exp. Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012). The essence of a procedural due process claim is "notice and an opportunity to be heard." *Kadakia v. Rutgers*, 633 F. App'x 83, 88 (3d Cir. 2015). To state a procedural due process claim, a plaintiff must allege that: "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Mulholland v. Government Cty. of Berks, Pa.*, 706 F.3d 227, 238 (3d Cir. 2013). "[A] state provides constitutionally adequate procedural due process when it provides reasonable remedies to rectify a legal error by a local administrative body." *Vurimindi v. City of Phila.*, 521 F. App'x 62, 65 (3d Cir. 2013) (internal quotation marks and citation omitted).

Substantive due process protects individual liberty rights from certain types of governmental action "regardless of the fairness of the procedures used to implement them." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). To state a substantive due process claim under § 1983, a plaintiff must allege facts that plausibly establish: (1) that the particular interest at issue is protected by the Fourteenth Amendment, and (2) that the government's deprivation of that protected interest shocks the conscience. *Connection Training Serv. v. City of*

*Phila.*, 358 F. App'x 315, 319 (3d Cir. 2009); *see Gottlieb v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 172 (3d Cir. 2001) (substantive due process is violated when state conduct is "arbitrary, or conscience shocking, in a constitutional sense") (internal quotation marks and citation omitted). Where, as here, the challenged governmental action permits time for unhurried judgment, it is sufficient for the plaintiff to allege that the defendant acted with deliberate indifference toward the plaintiff's constitutional rights. *Sanford v. Stiles*, 456 F.3d 298, 310 (3d Cir. 2006).

Based upon the allegations in the Complaint, it appears that Plaintiffs may be trying to assert claims premised upon the City Defendants' involvement in: (i) forcing Plaintiffs to vacate the North Martin Street property, (ii) arresting and detaining Plaintiffs for defiant trespass, and/or (iii) interfering with their parental rights. Each putative theory will be discussed in turn.

### (i) *Order to Vacate the North Martin Street Property*

Construed in the light most favorable to Plaintiffs, the Complaint and related exhibits establish that Plaintiffs believed they had a legal right to occupy the North Martin Street property pending completion of the statutory sales process, while the City Defendants did not. Plaintiffs based their position on the fact that the owners of record, the Tharps, had given them permission to occupy the property while it was being held in trust by the Crawford County Tax Claim Bureau. Further, because Plaintiffs' bid on the property had been accepted by the Tax Claim Bureau, subject only to challenges that might arise in connection with the statutory sales process, Plaintiffs believed they held an equitable ownership interest in the property. Lorenz, on the other hand, took the position that Plaintiffs could not lawfully occupy the premises because: (a) the residence had no water or sewer service and was in need of repairs in order to pass inspection; and (b) the necessary remediation, inspection, and restoration of water and sewer services could

16

not occur until Plaintiffs obtained a legally recorded deed to the property, following completion of the statutory sale process.

The Court finds that, for present purposes, Plaintiffs have adequately pled a constitutionally protected property interest relative to the North Martin Street property. It is "'well-established law [in Pennsylvania] that when the Agreement of Sale is signed, the purchaser becomes the equitable or beneficial owner through the doctrine of equitable conversion. The vendor retains merely a security interest for the payment of the unpaid purchase money.'" *Barak v. Karolizki*, 196 A.3d 208, 223 (Pa. Super. Ct. 2018) (quoting *DiDonato v. Reliance Standard Life Insurance Co.*, 249 A.2d 327, 329 (Pa. 1969)). Notably, the Pennsylvania Supreme Court has applied this principle in the context of a tax sale. In *Pivirotto v. City of Pittsburgh,* 528 A.2d 125 (Pa. 1987), the Court explained that:

> The doctrine of equitable conversion arose out of the power of the chancellor to compel the performance which was intended by the parties. This power was grounded in the principle that equity treats as done those things that should be done, *quod fieri debet facile praesumitur*. It is precisely because of the equitable remedy of specific performance that fundamental real property rights are created in a purchaser of realty prior to delivery of the deed. *Kerr v. Day*, 14 Pa. 112 (1850). The principles applicable to sales of real property between private parties are equally applicable to sales for delinquent taxes. Once appellee's successful bid was accepted, the parties, to wit the city and appellee-purchaser, intended that the sale should be perfected subject only to the record owner's redemption as provided by law. Failing redemption by the record owner during the statutory period, the successful bidder could certainly compel conveyance by the city treasurer. Thus, the doctrine of equitable conversion is applicable to a sale for delinquent taxes and its operation conveys equitable title to the purchaser. Defeasible that title is; but, barring redemption by the record owner during the statutory period, the successful bidder at the tax sale is entitled to compel conveyance by treasurer deed, and thus, he is the equitable owner.

528 A.2d at 127-28.

In disputing that Plaintiffs possessed a protected ownership interest in the North Martin Street property, the City Defendants cite *Swinka Realty Investments, LLC v. Lackawanna Cty.*

*Tax Claim Bureau*, No. 3:13-CV-00764, 2016 WL 3618399, at *8, 2016 U.S. Dist. LEXIS 86328, *26 n.10 (M.D. Pa. July 1, 2016), *aff'd*, 688 F. App'x 146 (3d Cir. 2017). In that case, the court ruled that a bidder in an upset sale had no rights in the subject property because the titled owner had effectively redeemed the property on the very day of the sale, prior to payment by the bidder. 2016 WL 3618399, at*8. Since no "sale" had technically occurred, the court concluded that the bidder had never acquired any equitable rights in the property. *Id.*

The Court is not persuaded that *Swinka Realty Investments* controls the outcome of Plaintiffs' due process claims. In this case, unlike in *Swinka,* neither the Tharps nor the taxing authorities ever sought to cancel the sale of the North Martin Street property to Plaintiffs, and the reasoning of *Pivirotto* lends support to Plaintiffs' theory that they acquired equitable ownership rights in the property pending completion of the statutory sales process. Although further record development and/or briefing may ultimately result in a different conclusion, the Court finds that, for present purposes, Plaintiffs have plausibly shown that they possessed a constitutionally protected property interest in the North Martin Street residence.

Furthermore, to the extent Plaintiffs are alleging a substantive due process violation in connection with their ejectment from subject property, the Court is satisfied that the Complaint states a viable claim. Courts in this judicial circuit have recognized that ownership of real property falls within the spectrum of "fundamental" rights to which substantive due process protections apply. *See Nicholas v. Penn State Univ.*, 227 F.3d 133, 143 (3d Cir. 2000) (noting that, in order for a property interest to qualify for protection under the substantive due process clause, it must be "fundamental" under the Constitution); *Joey's Auto Repair & Body Shop v. Fayette Cty.*, No. CV 18-87, 2018 WL 3997124, at *4 (W.D. Pa. Aug. 21, 2018), *aff'd*, No. 18-3087, 2019 WL 4082950 (3d Cir. Aug. 29, 2019) ("'Real property ownership is a property

interest worthy of substantive due process protection, as it is unquestionably a fundamental property interest dating back to the foundation of the American colonies.'") (quoting *Trotta v. Borough of Bogota*, No. 12-CV-2654, 2016 WL 3265689 (D.N.J. June 6, 2016)). Here, Plaintiffs have alleged a scenario whereby they, and the minor children in their custody, were evicted from their home and denied all access to the property because of a lack of city water and sewer services and the need for certain unspecified repairs to the home. Plaintiffs maintain that, when they attempted to address these problems, Lorenz repeatedly refused to engage with them based on his theory that Plaintiff could have no rights or access to the property until they were in possession of a recorded deed. Plaintiffs claim that Lorenz persisted in this stance and consistently ignored their pleas for assistance, despite being placed on notice that the County had approved Plaintiffs' bid on the property, the titled owners had consented to their presence at the residence, consummation of the sale would occur in relatively short order, and Plaintiffs had asserted colorable rights to the property. At this early juncture, the record supports a plausible inference that Lorenz deprived Plaintiffs of a fundamental property interest and, in doing so, acted with deliberate indifference toward Plaintiffs' constitutional rights.

On the other hand, the Court finds that no procedural due process claim has been stated because Plaintiffs have not alleged that they lacked a constitutionally adequate *process* through which to remedy their deprivation. The relevant "focus in procedural due process claims is on the adequacy of the remedial procedure, and not on the government's actual actions that allegedly deprived the individual of his liberty or property interest." *Button v. Snelson*, No. 3:12-CV-01941, 2016 WL 1252784, at *11 (M.D. Pa. Mar. 23, 2016) (internal citation and quotation marks omitted). Consequently, "[a] due process violation 'is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process.'" *Alvin v. Suzuki*,

227 F.3d 107, 116 (3d Cir. 2000) (quoting *Zinernon v. Burch*, 494 U.S. 113, 126 (1990)). "If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants." *Id.* "Further, absent the right to control the process, a defendant cannot be held liable, as a matter of law, for a deprivation of said right." *Sharpe v. County of Dauphin*, 4:09-CV-989, 2010 WL 3529283 (M.D. Pa. Sept. 7, 2010).

Since it is clear that Plaintiffs received prior notice of the City Defendants' plan to order their ejectment from the property, the question becomes whether Plaintiffs had a meaningful opportunity to be heard relative to that order. Here, the Complaint is devoid of any factual content concerning the procedures that existed for Plaintiffs to remedy their temporary exclusion from the property. Despite this, the Court takes judicial notice of the fact that Article 1905 of the Titusville City Housing Code appears to supply a process for challenging decisions of the City "Building Official." *See* Titusville Housing Code §§1905.02-1905.05, available at https://cityoftitusvillepa.gov/wp-content/uploads/2019/04/19-HOUS.pdf. Plaintiffs have made no averments concerning this process, which appears to contemplate an initial petition and hearing before the "Building Official" and a right of appeal to the Pennsylvania courts. *Id.* §§1905.03-1905.04. Thus, it is not clear whether Plaintiffs availed themselves of this process or whether they are claiming that it was constitutionally deficient. Even if the process available to them *was* deficient, Plaintiffs have not alleged how the named Defendants are responsible for that deficiency. Consequently, Plaintiffs have not pled a procedural due process violation in connection with their ejectment from the North Martin Street property.

### (ii) Separation of Plaintiffs' Family Unit

Plaintiffs also appear to be alleging due process violations relative to their separation from Green's minor children. According to the Complaint, the children went to live with a relative on August 11, 2016, following Plaintiffs' eviction from the North Martin Street property.

"The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment," *Stanley v. Illinois*, 405 U.S. 645, 651 (1972) (citation omitted), and this includes a parent's fundamental liberty interest in the care, custody and management of his or her child. *See Miller v. City of Phila.*, 174 F.3d 368, 374 (3d Cir. 1999). Importantly, however, the Due Process Clause "only protects against deliberate violations of a parent's fundamental rights – that is, where the state action at issue was specifically aimed at interfering with protected aspects of the parent-child relationship." *McCurdy v. Dodd,* 352 F.3d 820, 827-28 (3d Cir. 2003). The protection does not extend to "governmental action that affects the parental relationship only incidentally." *Id.* at 828.

Here, Plaintiffs do not claim that Defendants took any action that directly related to Plaintiffs' relationship with the minor children. Rather, the alleged intrusion is predicated solely on the Defendants' conduct as it relates to enforcing the order to vacate the North Martin Street property. At all times, Plaintiffs remained free to associate with the children, provided they did not attempt to do so at the North Martin Street residence. Consequently, Plaintiffs have not alleged that the Defendants actually deprived them of the liberty interest in question.[5]

---

[5] The same reasoning applies to Plaintiffs' claim that they were deprived of their family pets, which were "locked out [of] the home as well." ECF No. 4, Section IV. Plaintiffs do not allege any conduct on the part of the City Defendants that was specifically directed at separating them from their pets. And Plaintiffs were at all times free to take their animals with them to another suitable location. Thus, assuming that Plaintiffs held a constitutionally protected property interest in the possession of their family pets, they have nevertheless failed to plead a deprivation of that interest by the Defendants.

### (iii)  Wrongful Arrest and Detention

Plaintiffs may also be attempting to assert a procedural or substantive due process violation based on the fact they were arrested, detained briefly, and/or charged with defiant trespass.  As an incident of their arrest, they were handcuffed and placed in a holding cell for approximately thirty minutes, then released by Officer Bean with an "apology."  ECF No. 4, Section III(C)(o).  Officer Bean later filed criminal complaints formally charging Green and Restivo with defiant trespass on or about September 7 and 12, 2018, respectively, but the charges were ultimately withdrawn on October 11, 2018, the date of their preliminary hearing.  ECF No. 25-2; ECF No. 4-1 at 19-27.

Notably, Plaintiffs have not alleged that they were denied constitutionally adequate process in connection with their criminal proceedings, nor could they plausibly do so.  *See Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir.2000) (plaintiff must allege that the procedures available did not provide due process of law.).  Therefore, no procedural due process violation has been stated.

Moreover, Plaintiffs cannot state a viable substantive due process violation based on their allegedly wrongful arrests, detention, or prosecution.  Because these events directly implicate Fourth Amendment protections, they must be analyzed as potential Fourth Amendment claims.  *See United states v. Lanier,* 520 U.S. 259, 272 n.7 (1997) ("[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.").  Accordingly, Plaintiffs have not pled a due process violation in connection with their criminal proceedings.

### (iv) Conditions of Pretrial Detention

Finally, to the extent Plaintiffs would attempt to assert a substantive due process violation based upon the conditions of their brief post-arrest detention, such a claim is facially deficient. Under Fourteenth Amendment jurisprudence, a pretrial detainee may state a constitutional violation if he asserts facts showing that the conditions of his confinement are not reasonably related to a legitimate, non-punitive governmental objective and amounted to punishment prior to an adjudication of guilt. *See Bell v. Wolfish,* 441 U.S. 520, 539 (1979) ("[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal-- if it is arbitrary or purposeless -- a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.") (footnote and citation omitted).

According to the Complaint, Plaintiffs were detained for only about thirty minutes at the city jail, then released with an apology. Although Plaintiffs make a conclusory reference to "cruel and unusual punishment" in their Complaint, ECF No. 4, Section II, they do not offer any specific averments regarding the conditions of their confinement. Consequently, Plaintiffs have not stated a viable due process violation based upon their status as pretrial detainees.

### (b) Equal Protection

Plaintiffs' complaint also invokes their right to equal protection of the laws, as guaranteed by the Fourteenth Amendment. Plaintiffs' equal protection theory appears to be that Lorenz and/or Manross discriminated against indigent persons by implementing and enforcing a

policy of evicting residents from their homes if the utility services had been terminated for non-payment.  See ECF No. 4, Section V.

Although not entirely clear, Plaintiffs may be attempting to assert an equal protection claim based upon selective enforcement of the law.  To state this type of claim, a plaintiff must show: "(1) that he was treated differently from other similarly situated individuals, and (2) that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor ... or to prevent the exercise of a fundamental right." *Dique v. New Jersey State Police*, 603 F.3d 181, 184 n. 5 (3d Cir.2010) (quotations omitted).  Persons or parties are "similarly situated" for Equal Protection Clause purposes when "they are alike in all relevant aspects." *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir.2008).  At the motion to dismiss stage, a plaintiff "must allege facts sufficient to make plausible the existence of such similarly situated parties." *Perano v. Twp. of Tilden*, 423 F. App'x 234, 238 (3d Cir. 2011).  As to the second element of a selective enforcement claim, a plaintiff "must provide evidence of discriminatory purpose, not mere unequal treatment or adverse effect." *Jewish Home of E. Pa. v. Ctrs. for Medicare & Medicaid Servs.*, 693 F.3d 359, 363 (3d Cir. 2012).  The defendant must have "'selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects.'" *Id.* (quoting *Wayte v. United States*, 470 U.S. 598, 610 (1985)).

Here, Plaintiffs' averments fail to establish a plausible violation of their equal protection rights based on a selective enforcement theory.  First, the Complaint is devoid of any allegations that Plaintiffs were treated differently from other individuals who were similarly situated to them:  e.g., Plaintiffs do not allege the existence of a non-indigent group of individuals who lost their utility services but were not evicted; and, to the extent that non-indigent populations are *not* evicted because they *pay* their utility bills and therefore maintain

their utility services, such groups are not "similarly situated" to the group that Plaintiffs align with. Second, Plaintiffs have not pled the selective enforcement of a law based upon an unjustifiable standard, since relative poverty or wealth alone do not constitute "suspect classes" for purposes of the Equal Protection Clause. *See, e.g., Harris v. McRae*, 448 U.S. 297, 323 (1980); *Abdul–Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir.2001) (en banc). Third, Plaintiffs' averments do not suggest a policy of intentional and purposeful discrimination, as opposed to a policy that merely effects indigent persons adversely. In light of these deficiencies, Plaintiffs' equal protection claim fails to state a basis for relief under §1983.

### 5. PLAINTIFFS' FOURTH AMENDMENT CLAIMS

Plaintiffs' Complaint also invokes the Fourth Amendment, which protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and further ensures that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Here, Plaintiffs appear to be alleging Fourth Amendment violations based upon theories of "false arrest/false imprisonment" and "warrantless entry" into the North Martin Street property. ECF No. 4, Section II(A)(1).

### (a) Claims Arising From Plaintiffs' Criminal Proceedings

The Fourth Amendment's protection against unreasonable seizures encompasses claims predicated on alleged false arrests, false imprisonment, and malicious prosecution. *Martin v. U.S. Dep't of Homeland Sec.*, No. CV 17-3129 (MCA), 2018 WL 5980441, at *2 (D.N.J. Nov. 14, 2018) (noting that "violations of the Fourth Amendment include arrest without probable cause, false imprisonment, excessive force, and other claims involving searches or seizures of persons or property"). In order to state a Fourth Amendment claim for false arrest, Plaintiffs

must allege facts establishing that they were arrested without probable cause. *See James v. City of Wilkes–Barre,* 700 F.3d 675, 680 (3d Cir. 2012). A related claim for false imprisonment arises when officers arrest a person without probable cause and subsequently detain that person pursuant to that unlawful arrest. *See Adams v. Officer Eric Selhorst*, 449 F. App'x 198, 201 (3d Cir. 2011) (*per curiam*). To establish a Fourth Amendment claim predicated on malicious prosecution, Plaintiffs must allege that: (1) the Defendants initiated a criminal proceeding; (2) the criminal proceeding ended in Plaintiffs' favor; (3) the proceeding was initiated without probable cause; (4) the Defendants acted maliciously or for a purpose other than bringing the Plaintiffs to justice; and (5) the Plaintiffs suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003).

"[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *See Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995). "The proper inquiry in a section 1983 claim based on false arrest ... is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Phila.,* 855 F.2d 136, 141 (3d Cir. 1988).

As previously discussed, Plaintiffs were arrested on August 24, 2018 for defiant trespass after they were found to be present at the North Martin Street property, notwithstanding Lorenz' order to vacate the property. Under relevant Pennsylvania law, the offense of defiant trespass is committed when a person, "knowing that he is not licensed or privileged to do so, . . .

enters or remains in any place as to which notice against trespass is given by: actual communication to the actor[.]" 18 Pa. C.S.A. §3503(b)(1)(i).

The City Defendants maintain that Plaintiffs' false arrest/imprisonment claim must be dismissed because, based upon the averments in the Complaint and the exhibits appended thereto, Plaintiffs cannot establish the absence of probable cause for their arrests. To that end, Defendants point to Lorenz's notice to vacate the premises as well as numerous communications between and among the parties which, according to the Defendants, establish Plaintiffs' awareness that the authorities considered them trespassers.

Importantly, though, the crime of defiant trespass includes an element of intent or *mens rea*. *Commonwealth v. Namack*, 663 A.2d 191, 194 (Pa. Super. Ct. 1995). Therefore, a defendant who enters a property with a bona fide, good faith, but mistaken belief that he is entitled to be there cannot be convicted of defiant trespass. *Id*. at 194–95 (reversing a conviction for defiant trespass where appellant's attorney had advised him that he was entitled to continue to use a trail on complainant's property even over complainant's objections); *see also Commonwealth v. Wanner*, 158 A.3d 714, 718 (Pa. Super. Ct. 2017).

Here, the Complaint and related exhibits support a plausible inference that Plaintiffs believed they had an equitable ownership interest in the North Martin Street, pending completion of the sales process, and that this gave them the right to undertake repairs to the property even in the absence of the Defendants' consent. The record would also support an inference that both Lorenz and Minch were aware of the Plaintiffs' theory about their right to be present at the property. Thus, giving Plaintiffs the benefit of every favorable inference, the Complaint pleads a basis for concluding that Minch and Lorenz lacked probable cause to arrest Plaintiffs[6] because an

---

[6] Even though Lorenz was not a police officer, he can be liable on a theory of false arrest because he allegedly supplied the factual predicate for Plaintiffs' arrest. *See Pellegrino v. U.S. Transp.*

objectively reasonable officer in their position would have known that Plaintiffs lacked the *mens rea* necessary to commit a defiant trespass. The Court therefore finds that the Complaint states a viable Fourth Amendment violation by Lorenz and Minch based upon theories of false arrest and imprisonment.

On the other hand, to the extent Plaintiffs may be asserting a Fourth Amendment violation based upon a theory of malicious prosecution, no §1983 claim has been stated. To state a Fourth Amendment malicious prosecution claim, Plaintiffs must allege a deprivation of their liberty, consistent with the concept of a "seizure," as a consequence of a legal proceeding. *Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007). "Pretrial custody and some onerous types of pretrial, non-custodial restrictions constitute a Fourth Amendment seizure." *DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005) (no seizure resulted where plaintiffs were issued only a summons and did not have to post bail). Here, Plaintiffs allege that they were detained for only thirty minutes following their arrest, then released. ECF No. 4 at 6, Section III(C)(o). The criminal complaints in this case were issued the following month and served by summons. ECF No. 4-1 at 19-27. There is no indication that bond or other onerous pretrial conditions were imposed on the Plaintiffs, and the charges were ultimately dismissed at or around the time of the preliminary hearing. ECF No. 25-2. As a result, Plaintiffs cannot demonstrate the type of liberty deprivation that is necessary to state a Fourth Amendment malicious prosecution claim. *See Wiltz v. Middlesex Cty. Office of Prosecutor*, 249 F. App'x

---

*Sec. Admin.*, No. CIV. A. 09-5505, 2014 WL 3952936, at *4 (E.D. Pa. Aug. 12, 2014) (noting that, in a malicious prosecution claim under the Fourth Amendment, the "plaintiff must show that 'the nonprosecuting official . . . induced the prosecutor to bring charges that would not have been initiated without his urging'") (quoting *Hartman v. Moore*, 547 U.S. 250, 262 (2006)) (ellipsis in the original)*; see Halsey v. Pfeiffer*, 750 F.3d 273, 296–97 (3d Cir.2014) ("[I]f the officers influenced or participated in the decision to institute criminal proceedings, they can be liable for malicious prosecution.").

944, 949 (3d Cir. 2007) (holding that plaintiff was not deprived of liberty, even though she was arrested, where she failed to allege that she was incarcerated, required to post bond, maintain contact with Pretrial Services, refrain from traveling, or that she endured any other "post-indictment" deprivation of liberty as a result of the legal proceedings); *Taylor v. Officer Joseph Mazzone*, No. CV 15-6682, 2016 WL 4272266, at *4 (E.D. Pa. Aug. 12, 2016) (holding that, even if the plaintiff's ninety minute detention was a consequence of a legal proceeding, such a brief detention—without more—did not constitute a deprivation of liberty sufficient to constitute a "seizure" under the Fourth Amendment).

### (b) Unlawful Search and/or Seizure of the North Martin Street Property

Plaintiffs also appear to be claiming that their Fourth Amendment rights were violated when Lorenz twice made a warrantless entry into the North Martin Street residence – on August 17, 2018 and August 31, 2018 -- and/or when Ciccarelli entered the home on September 1, 2018, tore down curtains and blinds, and barricaded the entranceway. For Fourth Amendment purposes, a "search" occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. *See United States v. Jacobsen*, 466 U.S. 109, 113 (1984); *see also United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 77 (1993) ("The sanctity of the home recognized by this Court's cases . . . is founded on a concern with governmental *intrusion* into the owner's possessory or privacy interests -- the domain of the Fourth Amendment.")(internal quotations and citations omitted)(emphasis in original).

Relatedly, the Complaint can fairly be construed as alleging an unreasonable Fourth Amendment "seizure" of the residence by virtue of the Defendants' involvement in enforcing the order to vacate. A Fourth Amendment "seizure" of property occurs when there is some

meaningful interference with an individual's possessory interests in that property.  *Jacobsen*, 466 U.S. at 113.

In their moving papers, the City Defendants insist that Plaintiffs have not pled a Fourth Amendment violation because they were trespassers upon the property and, as such, lacked any legitimate privacy or ownership interest in the residence.  But as discussed above, Plaintiffs' theory that they possessed an equitable ownership interest in the property appears to be at least plausible at this point.  Although the City Defendants may ultimately have had reasonable grounds to support their intrusions upon the property, the Court cannot make a definitive determination on that point at this early juncture, as additional record development is needed.  Consequently, the Court finds that a Fourth Amendment violation has been adequately pled, based upon the City Defendants' actions in essentially "seizing" the North Martin Street residence and subsequently making warrantless entries therein.

### C.  Plaintiffs' Claims Under 42 U.S.C. §1981

Plaintiffs' complaint also purports to assert a claim under 42 U.S.C. §1981 for "equal rights under law."  ECF No. 4, Section II(A).  This statute provides, in relevant part, that

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. §1981(a).

Unlike 42 U.S.C. §1983, Section 1981 does not provide a private right of action against a state actor.  *See McGovern v. City of Phila.*, 554 F.3d 114, 121 (3d Cir. 2009); *Rose v. Dep't of Labor & Indus., Equal Opportunity Office,* No. 19-CV-2483, 2019 WL 3413835, at *2 (E.D. Pa. July 29, 2019).  In fact, Section 1983 provides the *exclusive* remedy for violations of §1981 by

state actors. *Id.* Accordingly, the Court will dismiss Plaintiffs' § 1981 claims for failure to state a claim upon which relief can be granted, as all of the named Defendants clearly acted under color of state law.[7]

### D. Plaintiffs' Claims Under 42 U.S.C. §1985

Plaintiffs' complaint also alludes to a "conspiracy to interfere" under 42 U.S.C. §1985. ECF No. 4, Section II(A). None of the averments or exhibits plausibly support a violation of §1985, however. Subsection (1) of the statute pertains to conspiracies whose aim is to prevent an officer from performing his duties, while subsection (2) pertains to conspiracies whose aim is to deter parties, witnesses or jurors from participating in court proceedings. See 42 U.S.C. §1985(1) and (2). No such conduct has been alleged here, making those statutory protections inapposite.

In addition, Plaintiffs have not alleged facts sufficient to support a conspiracy under §1985(3), which prohibits, among other things, conspiracies formed for the purpose of "depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). To state a claim under this provision, Plaintiffs must "allege that invidious racial or otherwise class-based discriminatory animus lay behind the defendants' actions, and [they] must set forth facts from which a conspiratorial agreement between the defendants can be inferred." *Brookhart v. Rohr*, No. 10–1449, 2010 WL 2600694 at *2 (3d Cir. June 30, 2010) (slip copy) (citing *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–68 (1993)). No such allegations are set

---

[7] In addition, a plaintiff cannot state a claim under § 1981 unless s/he alleges that 1) s/he is a member of a racial minority; 2) the defendant intentionally discriminated against the plaintiff on the basis of race; and 3) the discrimination negatively affected the plaintiff's ability to engage in one of the protected activities, including formation of a contract. *See Abdullah v. Small Bus. Banking Dep't of Bank of Am.*, 532 F. App'x 89, 90 (3d Cir. 2013); *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 797 (3d Cir. 2001). No allegations of race-based discrimination are present in this case to support a §1981 claim.

forth in the complaint, nor does such §1985(3) have any obvious application to the facts alleged here. Consequently, Plaintiffs' §1985 claims will be dismissed with prejudice.

### E. Qualified Immunity

Based upon the foregoing analysis, the only federal claims that have been stated are the following §1983 claims:

(i)    Plaintiffs' Fourteenth Amendment substantive due process claim against Defendant Lorenz based upon Plaintiffs' ejectment from the North Martin Street property;

(ii)    Plaintiffs' Fourth Amendment claims against Defendant Lorenz and Minch based upon Plaintiffs' alleged false arrest and imprisonment;

(iii)    Plaintiff's Fourth Amendment claims against Defendants Lorenz, Minch, and Ciccarelli based upon their effective "seizure" of the North Martin Street property and exclusion of Plaintiffs therefrom;

(iv)    Plaintiffs' Fourth Amendment claims against Defendants Lorenz and Ciccarelli based upon their warrantless entries into the North Martin Street property.

The Court finds that only Lorenz, Minch, and Ciccarelli are implicated in these claims, as Plaintiffs have not plausibly alleged any personal involvement on the part of Manross. Because Defendants have raised the doctrine of qualified immunity, the question becomes whether Plaintiffs' remaining §1983 claims should be dismissed on that basis.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when

they perform their duties reasonably." *Pearson*, 555 U.S. at 231. It "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012) (citing Pearson, 555 U.S. at 244).

At this stage of the proceedings, the Court declines to dismiss Plaintiffs' remaining claims on the basis of qualified immunity. Factual discovery has not yet occurred, and a more robust record is needed in order to fully inform the Court's qualified immunity analysis. Accordingly, the Court will deny Defendants' motion to dismiss on qualified immunity grounds. The denial, however, will be without prejudice to Defendants' right to reassert the defense at a later stage of the proceedings, as further discovery may warrant.

### F. *Amendment of Plaintiffs' Federal Claims*

When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Here, the Court has determined that Plaintiffs failed to state viable federal claims under 42 U.S.C. §§1981 or 1985. In addition, Plaintiffs have not stated cognizable §1983 claims, apart from their Fourteenth Amendment substantive due process claim based upon their ejection from the North Martin Street property, and their Fourth Amendment claims based upon: (a) their alleged false arrest and imprisonment; (b) Defendants' "seizure" of the North Martin Street property; and (c) Lorenz's and Ciccarelli's warrantless entries into the home.

Further amendment could not cure the deficiencies that the Court has identified with respect to most of the claims that are being dismissed. The only claim as to which amendment would not be patently futile is Plaintiffs' Fourteenth Amendment procedural due process claim based upon Plaintiffs' eviction from the North Martin Street property. Accordingly, the Court will permit Plaintiffs an opportunity for further pleading relative to that claim, as directed herein.

### G. Plaintiffs' Claims Under State Law

Finally, Plaintiffs appear to be asserting a negligence claim, as permitted by the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. C.S.A. §§8541, *et seq.*. *See* ECF No. 4, Section II(B)(1)-(2). Pursuant to the PSTCA, political subdivisions and their employees are generally immune against civil damage actions based upon negligent acts that result in injury to an individual, except insofar as the alleged negligence falls within certain specific types of conduct enumerated in the Act. *Id.* at §§8541-8542, 8545. In relevant part, this includes:

> [ ] Care, custody or control of personal property.--The care, custody or control of personal property of others in the possession or control of the local agency. The only losses for which damages shall be recoverable under this paragraph are those property losses suffered with respect to the personal property in the possession or control of the local agency.
>
> [ ] Real property.--The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency. . . .
>
> [ ] Care, custody or control of animals.--The care, custody or control of animals in the possession or control of a local agency, including but not limited to police dogs and horses.

42 Pa. C.S.A. §8542(b)(2), (3), and (8).

To state a claim of negligence under Pennsylvania, a plaintiff must allege facts which establish the breach of a legally recognized duty or obligation of the defendant that is causally

related to actual damages suffered by the plaintiff. *Green v. Pennsylvania Hosp.*, 123 A.3d 310, 315-16 (Pa. 2015). To prove the elements of a duty and the breach thereof, a plaintiff must show that the defendant's act or omission fell below the standard of care, and, therefore, increased the risk of harm to the plaintiff. *Id.* at 316. A plaintiff may pursue a negligence action against a defendant on the theory of direct liability or vicarious liability. *Id.*

Based upon a liberal reading of the complaint, Plaintiffs have pleaded enough factual content to state viable negligence claims against Lorenz and Ciccarelli. According to Plaintiffs, Lorenz and Ciccarelli were responsible for physical damage to the home and/or contents therein in connection with enforcing the order to vacate. Plaintiffs have also alleged injury relative to the loss of their pets. Based upon the record that has been developed thus far, a factfinder could plausibly infer that Lorenz and Ciccarelli exercised possession or control over the North Martin Street property and all contents therein, and that they breached a duty of care, resulting in loss to the Plaintiffs.

Notwithstanding this, the City Defendants contend that they are immune from liability by virtue of Section 5861.641 of the Pennsylvania Real Estate Tax Law, which provides:

> A county or bureau shall not have any civil or criminal liability or have any obligation for maintenance or for nuisance remediation of a tax-delinquent property, regardless of whether the property has been exposed to an upset sale or other sale under this act, unless the county or bureau purchases the property as provided in section 612.1. A trusteeship under this act shall not be considered the care, custody or control of real property under 42 Pa. C.S. § 8542(b)(3) (relating to exceptions to governmental immunity).

72 Pa. Stat. Ann. §5860.641(b). As the statutory language makes clear, however, the immunity is bestowed only on the "county" or tax claim "bureau" that holds the tax-delinquent property in trust. The City Defendants, all of whom are being sued in their personal capacities, do not meet this criterion for immunity.

To be sure, negligence claims brought against local officials are subject to other possible defenses, including the official's assertion of a good faith, reasonable belief that his actions were authorized or required by law. See 42 Pa. C.S.A. §8546. But the current state of the record does not allow the Court to resolve these fact-intensive defenses as a matter of law. Accordingly, the City Defendants' motion to dismiss will be denied relative to Plaintiffs' negligence claims.

## IV. CONCLUSION

Based upon the foregoing reasons, Krzysiak's will be granted, based on her lack of involvement in any actionable misconduct, and the claims against her will be dismissed with prejudice. The City Defendants' motion to dismiss will be denied relative to: (a) Plaintiffs' Fourteenth Amendment substantive due process claim based upon their ejectment from the North Martin Street property; (b) Plaintiffs' Fourth Amendment claim based on alleged false arrest and imprisonment; (c) Plaintiff's Fourth Amendment claim predicated upon the Defendants' effective "seizure" of the North Martin Street property and warrantless entry into the home, and (d) Plaintiffs' negligence claims against Lorenz and Ciccarelli. In all other respects, the City Defendants' motion to dismiss will be granted. Because Manross is not plausibly implicated in the remaining claims, he will be terminated as a party to this case.

In accordance with the Court's obligations under 28 U.S.C. § 1915(e)(2), the claims asserted against Defendant Minch with be dismissed, with the exception of Plaintiffs' Fourth Amendment §1983 claims based upon Plaintiffs' alleged false arrest and imprisonment, and the allegedly unlawful "seizure" of the North Martin Street property.

Insofar as Plaintiffs can potentially cure the deficiencies in their procedural due process claim based upon the issuance and enforcement of the Order to Vacate the North Martin Street property, that claim will be dismissed without prejudice to Plaintiff's attempt to replead same. In all other respects, the Court's dismissal of Plaintiffs' claims is with prejudice and without leave to amend.

An appropriate order follows.

s/Susan Paradise Baxter
SUSAN PARADISE BAXTER
U.S. DISTRICT JUDGE

cc:    All counsel of record
(via cm/ecf)

Stephanie Green
307 North Martin Street
Titusville, PA 16354
(via cm/ecf and U.S. mail)

Michael Restivo
307 North Martin Street
Titusville, PA 16354
(via U.S. Mail)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

STEPHANIE GREEN on behalf of   )
her minor children,             )
et al.                            )
                               )     **Civil Action No. 18-289 Erie**
            **Plaintiff,**     )
                               )
        **v.**               )
                               )
**LARRY MANROSS, City Manager**  )
**of Titusville PA, et al.,**       )
                               )
           **Defendants.**   )

## O R D E R

NOW, this 27th day of September, 2019, for the reasons set forth in the accompanying Memorandum Opinion,

IT IS ORDERED that Defendant Krzysiak's Motion to Dismiss Plaintiffs' Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6), ECF No. [21], shall be, and hereby is GRANTED, and the claims against Krzysiak are DISMISSED with prejudice.

IT IS FURTHER ORDERED that the Motion to Dismiss by Defendants Manross, Lorenz, and Ciccarelli, ECF No. [24], shall be, and hereby is, GRANTED in part and DENIED in part as follows:

(a) The Motion is GRANTED as to all of the following claims:

    (i)      Plaintiffs' claims against Defendant Manross;

    (ii)     Plaintiffs' §1983 claims based upon alleged Fifth Amendment violations;

    (iii)    Plaintiffs' §1983 claims based upon alleged Eighth Amendment violations;

    (iv)    Plaintiffs' §1983 claim based upon alleged procedural due process violations arising from Plaintiffs' ejectment from the North Martin Street property;

1

(v)     Plaintiffs' §1983 claims based upon alleged procedural and substantive due process violations arising from their separation from Green's minor children;

(vi)    Plaintiffs' §1983 claims based upon alleged procedural and substantive due process violations arising from Plaintiffs' arrest and detention;

(vii)   Plaintiffs' §1983 claims based upon alleged substantive due process violations arising from the conditions of Plaintiffs' pretrial detention;

(viii)  Plaintiffs' §1983 claims based upon alleged violations of their right to equal protection under the law;

(ix)    Plaintiffs' §1983 claims based upon an alleged malicious prosecution in violation of the Fourth Amendment;

(x)     Plaintiffs' claims under 42 US.C. §1981; and

(xi)    Plaintiffs' claims under 42 U.S.C. §1985.

(b) The Motion is DENIED with respect to the following §1983 claims:

(i)      Plaintiffs' Fourteenth Amendment substantive due process claim against Defendant Lorenz based upon Plaintiffs' ejectment from the North Martin Street property;

(ii)     Plaintiffs' Fourth Amendment claims against Defendant Lorenz based upon Plaintiffs' alleged false arrest and imprisonment;

(iii)    Plaintiff's Fourth Amendment claims against Defendants Lorenz and Ciccarelli based upon their effective "seizure" of the North Martin Street property and exclusion of Plaintiffs therefrom;

(iv)    Plaintiffs' Fourth Amendment claims against Defendants Lorenz and Ciccarelli based upon their warrantless entries into the North Martin Street property.

(c) the Motion is further DENIED with respect to Plaintiffs' negligence claims against Defendants Lorenz and Ciccarelli under Pennsylvania law stemming from damage to their property and/or the loss of their pets.

In accordance with the Court's obligations under 28 U.S.C. § 1915(e)(2)(ii), IT IS FURTHER ORDERED that the claims asserted against Defendant Minch shall be, and hereby

2

are, DISMISSED, except for Plaintiffs' Fourth Amendment claims under 42 U.S.C. §1983 based upon Plaintiffs' alleged false arrest and imprisonment and the alleged "seizure" of the North Martin Street property.

IT IS FURTHER ORDERED that the Court's dismissal of all aforementioned claims shall be WITH PREJUDICE, except for Plaintiffs' claims against Defendants Lorenz and Minch under 42 U.S.C §1983, based upon alleged procedural due process violations in connection with Plaintiffs' ejectment from the North Martin Street property, which claim shall be, and hereby is, DISMISSED without prejudice. Plaintiffs shall have leave to file, on or before October 31, 2019, an amended pleading which attempts to restate this claim in a manner consistent with the Court's ruling herein. Any such amended pleading should also include the surviving claims as enumerated above. In the event Plaintiffs fail to file an amended pleading on or before October 31, 2019, the Court will consider the aforementioned procedural due process claim abandoned, and the Court's dismissal of that claim shall be converted to a DISMISSAL with prejudice without further notice.

IT IS SO ORDERED.

SUSAN PARADISE BAXTER
United States District Judge

cc:     All counsel of record
        (via cm/ecf)

        Stephanie Green
        307 North Martin Street
        Titusville, PA 16354
        (via cm/ecf and U.S. mail)

        Michael Restivo
        307 North Martin Street
        Titusville, PA 16354
        (via U.S. Mail)